**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| Solo Brands, LLC d/b/a Solo Stove,<br>1001 Mustang Drive<br>Grapevine, TX 76051<br><br>      Plaintiff,<br><br>  v.<br><br>City Bonfires, LLC<br>891 Rockville Pike Ste. I<br>Rockville, MD 20852<br>Montgomery County<br><br>and<br><br>Backhome Products, LLC,<br>9468 E Desert Vw<br>Scottsdale, AZ 85255<br><br>      Defendants. | Civil Action No.: 1:24-cv-3413<br><br><br>**JURY TRIAL DEMANDED** |

**<u>ORIGINAL COMPLAINT</u>**

## PRELIMINARY STATEMENT

1.      Solo Stove is a classic American Success story.  Founded by two brothers, and born in a garage, Solo Stove has from its founding created simple, ingenious outdoor products that help people enjoy good moments that turn into lasting memories.  Today, Solo Stove is a leader and innovator in the outdoor products market and its products include smokeless fire pits, such as its well-known Backyard product line:



This product (and others in this line) are protected by several U.S. patents.  In addition to its patent protection, Solo Stove's unique combination of elements—separate from the features that power the functionality of its products—provides a distinct look and feel for its line of smokeless fire pits.  As a result of Solo Stove's prominent and continuous use of this combination of elements in interstate commerce, consumers recognize Solo Stove's trade dress as uniquely identifying Solo Stove as the source of its products.

2.      Unfortunately, following the enormous commercial success of Solo Stove's smokeless fire pits—and perhaps because of it—Defendants recently launched a series of smokeless fire pits that feature a virtually identical design.  Defendants' use of this design constitutes willful patent infringement, trade dress infringement, and unfair competition.  This

action is brought to put an end to that infringement and to restore competitive fairness to the market for outdoor products.

## PARTIES

3.      Plaintiff Solo Brands, LLC d/b/a Solo Stove ("Solo Stove") is a limited liability corporation organized under the laws of the State of Texas, with a principal place of business at 1001 Mustang Drive, Grapevine, Texas 76051.

4.      Defendant City Bonfires, LLC ("City Bonfires") is a limited liability corporation organized under the laws of the State of Maryland, with its principal place of business at 891 Rockville Pike Ste I, Rockville, Maryland 20852.  City Bonfires may be served through its registered agent Chris McCasland, 1820 Cliffe Hill Way, Potomac, Maryland 20854.

5.      Defendant Backhome Products, LLC ("Back Home Products") is a limited liability corporation organized under the laws of the State of Arizona, with its principal place of business at 9468 E Desert Vw, Scottsdale, Arizona 85255.  Back Home Products may be served through its registered agent United States Corporation Agents, Inc., 1820 E. Ray Road #1000, Chandler, Arizona 85225.

6.      In or about July 2024, Back Home Products acquired City Bonfires and City Bonfires is now either wholly owned or controlled by Back Home Products.

7.      As such, Back Home Products—in addition to being liable for its own acts of infringement—is at least vicariously liable for the acts of City Bonfires, including for the acts of infringement alleged in this Original Complaint.

## JURISDICTION AND VENUE

8.      This action involves claims arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271, 281-85, the Lanham Act, 15. U.S.C. § 1051, *et seq*., and the common laws of the State of Maryland.

9.      This Court has subject matter jurisdiction over this action under Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1331 (federal question jurisdiction), 1338(a) (trade dress infringement), and 1338(b) (unfair competition) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).   In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1367.

10.     This Court has personal jurisdiction over each of the Defendants.

11.     Defendant City Bonfires is domiciled in the State of Maryland, having been incorporated in and maintaining its principal place of business in this State.

12.     Upon information and belief, Defendant Back Home Products controls the operations of Defendant City Bonfires and directs its day-to-day activities.

13.     Defendants City Bonfires and Back Home Products both regularly conduct business in the State of Maryland.  For example, Defendant Back Home Products sells infringing products to customers in the State of Maryland, including in this District.  Defendant City Bonfires conducts business in the State of Maryland, including from its place of business in this District.

14.     In addition, (i) Defendants have advertised, marketed, promoted, offered for sale, sold, and/or distributed, and continue to advertise, market, promote, offer for sale, sell, and/or distribute, infringing products to their customers and/or potential customers located throughout the United States, including in the State of Maryland; (ii) Defendants' acts giving rise to this lawsuit

and causing harm to Solo Stove have occurred and are occurring in the State of Maryland; and (iii) Defendants' customers and/or potential customers reside in the State of Maryland.

15.    Venue is proper in this District under Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because Defendants either conduct business in this District, reside in this District, or both.  Venue is also proper in this District pursuant to Section 1400(b) of the Judicial Code, 28 U.S.C. § 1400(b), because Defendants have committed and continue to commit acts of patent infringement, trade dress infringement, and unfair competition in this District, including using, advertising, marketing, promoting, offering to sell, selling, and/or distributing infringing products in this District, and/or importing infringing products into this District. Defendants' acts in this District include, without limitation, making internet sales, importing into this District infringing products, inducing others to commit acts of patent infringement in the State of Maryland, and/or committing at least a portion of any other infringements alleged herein in this District.  For example, City Bonfires has offered for sale or sold its infringing products to customers in this District, including through its website, *citybonfires.com*.  Back Home Products too has offered for sale or sold its infringing products to customers in this District, including through its website, *colemanbackhome.com.*

## FACTS

### Solo Stove's Intellectual Property

16.    Solo Stove creates and designs inventive outdoor products designed to help people connect with nature and each other.  These products include fire pits, camp stoves, pizza ovens, and related accessories.  Solo Stove advertises and sells these products through its website, *solostove.com*, and a network of retailers.  Today, its products are sold throughout the United States, including within the State of Maryland, and in many countries around the world.

17.    In 2016, Solo Stove launched its 19.5" Bonfire smokeless fire pit. Following the success of this launch, it introduced into the marketplace the 15" Ranger fire pit, 27" Yukon fire pit, and 30" Canyon fire pit.  Together, these smokeless fire pits are referred to as the "Solo Stove Fire Pits."  Images of two of the Solo Stove Fire Pits are shown below:



*Solo Stove's Patents*

18.    Solo Stove has been granted several U.S. Patents that protect its inventions, including patents related to its innovative Solo Stove Fire Pits.

19.    On July 19, 2022, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 11,391,465 ("the '465 Patent"), titled "Combustible Fuel Burning Fire Pit With Removable Fire Grate."  A true and correct copy of the '465 Patent is attached hereto as **Exhibit A**.

20.    The claims of the '465 Patent are valid, enforceable, and have not expired.

21.    Solo Stove owns the '465 Patent and has the right to sue and recover damages for infringement of the '465 Patent.

22.    On July 18, 2023, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 11,703,227 ("the '227 Patent"), titled, "Fire Pit System."  A true and correct copy of the '227 Patent is attached hereto as **Exhibit B**.

23.    The claims of the '227 Patent are valid, enforceable, and have not expired.

24.     Solo Stove owns the '227 Patent and has the right to sue and recover damages for infringement of the '227 Patent.

25.     On June 22, 2021, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. D923,163 ("the D163 Patent"), titled, "Fire Pit."  A true and correct copy of the '163 Patent is attached hereto as **Exhibit C**.

26.     The claim of the D163 Patent is valid, enforceable, and has not expired.

27.     Solo Stove owns the D163 Patent and has the right to sue and recover damages for infringement of the D163 Patent.

<em>Solo Stove's Trade Dress</em>

28.     Since their initial launch, the Solo Stove Fire Pits have all featured, and they currently all feature, the same distinctive and non-functional design, which is comprised of a smooth cylindrical drum with a brand name and logo molded into the bottom half of the drum, such that the name and logo appear in the same color and material as the drum but stand out in their texture, a removable flame ring at the top of the drum that tapers down conically toward the exterior walls, and small openings placed equidistantly from one another in a uniform size around the entire circumference of the very bottom of the drum (the "Solo Stove Trade Dress").

29.     The Solo Stove Trade Dress constitutes protectable trade dress.  The combination of elements comprising the Solo Stove Trade Dress has come to identify to consumers the source of the Solo Stove Fire Pits.  This non-functional design has established secondary meaning in the marketplace.

30.     Over the last eight years, Solo Stove has invested significant resources in the design, development, manufacture, advertisement, marketing, and promotion of the Solo Stove Fire Pits.  Solo Stove has continuously and extensively advertised, marketed, and promoted these

products through a variety of national media, including social media, print, and television commercials, as shown in the examples below:







31.    Since 2016, Solo Stove has spent many millions of dollars on advertising, marketing, and promoting its Solo Stove Fire Pits.

32.    The Solo Stove Fire Pits have received widespread and unsolicited public attention and are widely recognized by consumers throughout the United States, including in the State of Maryland.   The Solo Stove Fire Pits, including images of the products showing the Solo Stove Trade Dress, have been featured in numerous news, magazine, television, social media, and other online articles and reviews such as USA Today, Rolling Stone, Forbes.com, CNN.com, CNET, Popular Mechanics, and many more.

33.    The Solo Stove Fire Pits are sold primarily online, including on Solo Stove's website, *solostove.com*.  They are also sold in popular national and regional retail stores, including

Ace Hardware, Academy Sports, Dick's Sporting Goods, REI, Tractor Supply, and dozens of smaller retail stores across the country, including in the State of Maryland.

34.    The Solo Stove Fire Pits have achieved considerable commercial success.  Today, Solo Stove is widely recognized as a market leader in the smokeless fire pit industry.

35.    As a result of Solo Stove's continuous and exclusive use and advertising of its Solo Stove Fire Pits bearing the Solo Stove Trade Dress for over eight years throughout the United States and in the State of Maryland, the Solo Stove Trade Dress has achieved significant recognition in the marketplace and is well known to the public and trade as exclusively identifying Solo Stove as the source of the Solo Stove Fire Pits and distinguishing such goods from those of third parties.  The Solo Stove Trade Dress represents goodwill that is of great value to Solo Stove.

36.    The Solo Stove Trade Dress is non-functional.  It is not essential to the use or purpose of a smokeless fire pit.  The combination of the texture of the cylindrical drum, which is smooth except for the contrasting molded name and logo, placement of the name and logo on the bottom half of the drum, tapered removable flame ring, and equidistant placement of the uniform-sized small openings around the circumference of the very bottom of the drum are not useful to the function of the fire pit and do not affect the cost or quality of the product.  These were stylistic choices that Solo Stove chose to create a unique look and feel for its fire pits, separate from their utility.  Alternative fire pit designs that do not infringe the Solo Stove Trade Dress, such as a design with a differently shaped ring or non-uniform-sized openings placed in a different location, are available to competitors.  Indeed, Solo Stove sells another line of smokeless fire pits featuring design elements different from those comprising the Solo Stove Trade Dress.  *See* https://www.solostove.com/en-us/p/mesa?sku=SSMESA-FG-SS.

37.      It is the combination of the arbitrary and ornamental elements of the Solo Stove Trade Dress that makes the Solo Stove Fire Pits immediately recognizable as a product sourced from Solo Stove.

38.      While Solo Stove has invented useful patented features found in the Solo Stove Fire Pits, those features are different from the elements that comprise the Solo Stove Trade Dress.

### **Defendants' Infringing Acts**

39.      Defendants, individually and collectively, use, advertise, market, promote, offer for sale, sell, and distribute in the United States, and/or import into the United States, two types of smokeless fire pits: (1) tabletop fire pits and (2) non-tabletop fire pits (collectively, "Product Offerings").

40.      Defendants' tabletop fire pits come in two sizes:

   i.   Coleman® Cityscapes™ 5 Smokeless Tabletop Fire Pit; and

   ii.  Coleman® Cityscapes™ 10 Smokeless Tabletop Fire Pit.

41.      Defendants' non-tabletop fire pits come in three sizes:

   i.   Coleman® Cityscapes™ 15 Smokeless Fire Pit;

   ii.  Coleman® Cityscapes™ 20 Smokeless Fire Pit; and

   iii. Coleman® Cityscapes™ 25 Smokeless Fire Pit.

42.      Defendants advertise and prominently display Defendants' Product Offerings on their websites, as shown at https://citybonfires.com/collections/coleman-cityscapes-smokeless-fire-pits-by-city-bonfires, https://colemanbackhome.com/collections/fire-pits, and in the screenshots below:









43.     Defendants' Product Offerings are sold and offered for sale online, including on Defendants' websites, *citybonfires.com* and *colemanbackhome.com*.   They are also sold and offered for sale in popular national and regional retail stores, including, Ace Hardware, REI, Tractor Supply, and numerous smaller retail stores throughout the country, including in the State of Maryland.

<u>*Defendants' Infringement of the Solo Stove Trade Dress*</u>

44.    Notwithstanding Solo Stove's prior rights in the Solo Stove Trade Dress, Defendants recently began using the product design shown below in interstate commerce in connection with Defendants' Product Offerings ("Infringing Trade Dress"):

 

45.    The Infringing Trade Dress is comprised of a smooth cylindrical drum with the COLEMAN brand name and a lantern logo molded into the bottom half of the drum, such that the name and logo appear in the same color and material as the drum but stand out in their texture, a removable flame ring at the top of the drum that tapers down conically toward the exterior walls, and small holes placed equidistantly from one another in a uniform size around the entire circumference of the very bottom of the drum.

46.    Defendants use and prominently display the Infringing Trade Dress on their respective websites, *citybonfires.com* and *colemanbackhome.com*, as shown at

13

https://citybonfires.com/collections/coleman-cityscapes-smokeless-fire-pits-by-city-bonfires,

https://colemanbackhome.com/collections/fire-pits, and in the screenshot below:



47.    Defendants' Infringing Trade Dress is virtually identical to the Solo Stove Trade Dress, as illustrated below:



48.    Defendants' Product Offerings sold under and in connection with the Infringing Trade Dress are virtually identical to the Solo Stove Trade Dress and products.

49.    Defendants' Product Offerings bearing the Infringing Trade Dress directly compete with the Solo Stove Fire Pits bearing the Solo Stove Trade Dress, and are distributed through the same trade channels and sold in the same stores.

50.    Solo Stove's use of the Solo Stove Trade Dress predates Defendants' use of their confusingly similar Infringing Trade Dress.  Solo Stove's rights in the Solo Stove Trade Dress are superior and have priority over any rights Defendants might claim in the Infringing Trade Dress.

51.    Upon information and belief, prior to adopting and using the Infringing Trade Dress, Defendants had actual knowledge of the Solo Stove Trade Dress.

52.    Defendants' use of the Infringing Trade Dress with Defendants' Product Offerings is likely to cause marketplace confusion by, for example, misleading consumers into believing that Defendants and/or Defendants' Product Offerings bearing the infringing Trade Dress are the same as, affiliated with, or sponsored or approved by Solo Stove or the Solo Stove Fire Pits bearing the Solo Stove Trade Dress.

53.    Defendants' use of the Infringing Trade Dress is likely to cause consumer confusion or mistake, or to mislead or deceive consumers, as to the source, origin, connection, sponsorship, affiliation, or approval of Defendants' Product Offerings, and appears designed to divert and appropriate to Defendants the goodwill created by Solo Stove in its Solo Stove Trade Dress.

*Defendants' Knowledge of Solo Stove's Patents*

54.    Beginning as early as January 2022, City Bonfires and Solo Stove engaged in business discussions to explore opportunities to collaborate.  As part of those discussions, on information and belief, City Bonfires became aware of Solo Stove's patent portfolio, which

included the D163 Patent and the applications that led to the '465 and '227 Patents. Thus, upon information and belief, City Bonfires knew of the D163 Patent as early as January 2022, and knew of the '465 and '227 Patents as of the date of each patent's issuance in July 2022 and July 2023, respectively.

55.     On information and belief, Back Home Products became aware of Solo Stove's patents in connection with its purchase of City Bonfires in or around July 2024, and the launch of Defendants' Product Offerings was contemplated during the purchase process and discussed between City Bonfires and Back Home Products. As such, on information and belief, Back Home Products consummated its purchase of City Bonfires with both knowledge of Solo Stove's patent rights and, nevertheless, an intent to launch Defendants' Product Offerings in time for the 2024 holiday season.

56.     In light of these facts and other facts expected to be discovered during the pendency of this case, prior to the launch of Defendants' Product Offerings, Defendants actually knew or should have known that their actions constituted an unjustifiably high risk of infringement of Solo Stove's valid and enforceable patents.

57.     Additionally, Solo Stove marks each of its fire pits. Solo Stove's website states:

In accordance with 35 USC287(a), Solo Stove provides notice that the Solo Stove products listed below are protected by the associated patents in the United States and other referenced nations. The following list is not all- encompassing. The products listed below and other Solo Stove products may be protected by one or more additional patents and pending patents in the US and elsewhere.

*See* https://www.solostove.com/en-us/patents. The website lists the patents that are encompassed by Solo Stove's fire pits, which includes the '465, '227, and D163 Patents. Thus, Defendants had constructive notice of the '465, '227, and D163 Patents at the time

they first made, used, offered to sell, or sold any of their Product Offerings, within the United States, and/or imported into the United States any of their Product Offerings.

## COUNT I: INFRINGEMENT OF THE '465 PATENT

58.     Solo Stove incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

59.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have each directly infringed or induced others to infringe the '465 Patent, either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed systems, assemblies, and/or products that infringe one or more claims of the '465 patent, including at least claim 1.

60.     Claim 1 of the '465 Patent recites:

A fire pit comprising:

an outer wall and an inner wall, the inner wall being spaced from the outer wall to form an air passage therebetween, the inner wall having a radially inwardly facing surface and defining an opening sized to receive a combustible fuel for burning, the inner wall defining a cylindrical burn chamber having a chamber diameter;

a sheet metal, removable fuel grate disposed within the cylindrical burn chamber, wherein the removable fuel grate is dome-shaped, the removable fuel grate concentric with the cylindrical burn chamber and sized to allow the removable fuel grate to be vertically displaced from a first position within the burn chamber that supports combustible fuel during use to a second position outside the burn chamber, the removable fuel grate defining an air chamber below the removable fuel grate, the removable fuel grate comprising:

an array of holes sized to permit air flow from the air chamber below the removable fuel grate and sized to permit passage of ash from the combustible fuel;

a handle shaped to be grasped by a user to permit a user to remove the removable fuel grate from the fire pit by lifting the removable fuel grate vertically through the burn chamber and providing access to the air chamber below the removable fuel grate;

a removeable ash pan disposed below the fuel grate, the removeable ash pan having sidewalls and a bottom disposed in a position in the fire pit to capture the ash from the combustible fuel when the combustible fuel is burned in the burn chamber; and

a horizontal bracing structure having a central hole therein to permit passage of air toward the air chamber below the removable fuel grate, the bracing structure configured to support the removeable ash pan, the bottom of the ash pan and the bracing structure defining a horizontal, radially outwardly directed passageway from the central hole to allow air to flow to the air chamber below the removable fuel grate.

61.    Defendants' Product Offerings, including tabletop and non-tabletop fire pits (collectively, the "'465 Patent Accused Products"), infringe the '465 patent, including each and every limitation of claim 1.

62.    As a non-limiting example, a chart demonstrating infringement of claim 1 of the '465 Patent is attached hereto as **Exhibit D**.

63.    On information and belief, Defendants have been and are now indirectly infringing the '465 patent in violation of 35 U.S.C. § 271(b) at least by intentionally instructing, encouraging, aiding, and/or directing others how to offer to sell, sell, and/or use the '465 Patent Accused Products in an infringing manner, including claim 1, through their educational and promotional materials and support activities.  Upon information and belief, Defendants have committed and continue to commit affirmative acts that cause infringement of one or more claims of the '465 patent with knowledge or willful blindness that the induced acts constitute infringement of one or more claims of the '465 patent.  By way of example, as set forth above, Defendants publish on their website instructions that, when followed in conjunction with use of the '465 Patent Accused Products, infringe one or more claims of the '465 Patent.  In addition, upon information and belief, Defendants distribute the '465 Patent Accused Products to retailers for downstream sale to customers along with promotional materials and instructions that, when followed in conjunction with the offer for sale, sale, or use of the '465 Patent Accused Products, infringe one or more claims of the '465 patent.

64.    Defendants also have known of the '465 Patent and its relevance to the '465 Patent Accused Products since at least the filing of this Complaint.

65.    Defendants continue to engage in these activities knowing that the products they make, use, offer for sale, sell, and/or import into the United States infringe the '465 Patent.

66.    Defendants acts have caused and will continue to cause Solo Stove to suffer irreparable injury and damage for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the '465 Patent.

67.    Alternatively, as a result of Defendants' infringement of the '465 Patent, Solo Stove has suffered and continues to suffer damages in an amount not yet determined, of at least a reasonable royalty and/or lost profits due to loss of sales, profits, and potential sales that Solo Stove would have made but for Defendants' infringing acts.

68.    Defendants' infringement of the '465 Patent has been and continues to be willful, such that Solo Stove is entitled to enhanced damages and to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT II: INFRINGEMENT OF THE '227 PATENT

69.    Solo Stove incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

70.    On information and belief, in violation of 35 U.S.C. § 271, Defendants have directly infringed or induced others to infringe the '227 Patent, either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed systems, assemblies, and/or products that infringe one or more claims of the '227 patent, including at least claim 11.

71.    Claim 11 of the '227 Patent recites:

A fire pit system, comprising:

a fire pit stand including a stand wall, the stand wall being cylindrical, the cylindrical stand wall defining a first outside diameter, and the cylindrical stand wall comprising stand openings formed therethrough; and

a fire pit body adapted to sit atop the fire pit stand in a use configuration, the fire pit body comprising:

 a body top end portion;

 a body bottom end portion;

 an exterior body wall extending between the body bottom end portion and the body top end portion, the exterior body wall being cylindrical, the cylindrical exterior body wall defining a second outside diameter, and the second outside diameter of the cylindrical exterior body wall being greater than the first outside diameter of the cylindrical stand wall;

 an interior body wall inside the cylindrical exterior body wall to permit an upward flow of air therebetween, the interior body wall being cylindrical, and the cylindrical interior body wall defining a first inside diameter;

 an upper ring at the body top end portion, the upper ring defining a second inside diameter, and the second inside diameter of the upper ring being less than both:

  the first inside diameter of the cylindrical interior body wall; and

  the first outside diameter of the cylindrical stand wall;

 and

 at least one inwardly-facing opening disposed below the upper ring at the body top end portion, the at least one inwardly-facing opening permitting a flow of air from between the cylindrical interior body wall and the cylindrical exterior body wall to fuel secondary combustion;

wherein the fire pit body and the fire pit stand are structurally arranged so that, when in the use configuration:

the cylindrical interior body wall of the fire pit body is coaxial with the cylindrical stand wall of the fire pit stand and extends in a parallel relation to the cylindrical stand wall of the fire pit stand; and

the cylindrical exterior body wall of the fire pit body is coaxial with the cylindrical stand wall of the fire pit stand and extends in a parallel relation to the cylindrical stand wall of the fire pit stand.

72. Defendants' tabletop fire pits (collectively, the "'227 Patent Accused Products") infringe the '227 patent, including each and every limitation of claim 11.

73. As a non-limiting example, a chart demonstrating infringement of claim 11 of the '227 Patent is attached hereto as **Exhibit E**.

74.     On information and belief, Defendants have been and are now indirectly infringing the '227 patent in violation of 35 U.S.C. § 271(b) at least by intentionally instructing, encouraging, aiding, and/or directing others how to offer to sell, sell, and/or use the '227 Patent Accused Products in an infringing manner, including claim 11, through their educational and promotional materials and support activities.  Upon information and belief, Defendants have committed and continue to commit affirmative acts that cause infringement of one or more claims of the '227 patent with knowledge or willful blindness that the induced acts constitute infringement of one or more claims of the '227 patent.  By way of example, as set forth above, Defendants publish on their website instructions that, when followed in conjunction with use of the '227 Patent Accused Products, infringe one or more claims of the '227 Patent.  In addition, upon information and belief, Defendants distribute the '227 Patent Accused Products to retailers for downstream sale to customers along with promotional materials and instructions that, when followed in conjunction with the offer for sale, sale, or use of the '227 Patent Accused Products, infringe one or more claims of the '227 patent.

75.     Defendants also have known of the '227 Patent and its relevance to the '227 Patent Accused Products since at least the filing of this Complaint.

76.     Defendants continue to engage in these activities knowing that the products they make, use, offer for sale, sell, and/or import into the United States infringe the '227 Patent.

77.     Defendants acts have caused and will continue to cause Solo Stove to suffer irreparable injury and damage for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the '227 Patent.

78.     Alternatively, as a result of Defendants' infringement of the '227 Patent, Solo Stove has suffered and continues to suffer damages in an amount not yet determined, of at least a

reasonable royalty and/or lost profits due to loss of sales, profits, and potential sales that Solo Stove would have made but for Defendants' infringing acts.

79.    Defendants' infringement of the '227 Patent has been and continues to be willful, such that Solo Stove is entitled to enhanced damages and to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT III: INFRINGEMENT OF THE D163 PATENT

80.    Solo Stove incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

81.    On information and belief, in violation of 35 U.S.C. § 271, Defendants have directly infringed or induced others to infringe the D163 Patent, either literally or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed systems, assemblies, and/or products that infringe claim 1 of the D163 Patent.

82.    Defendants' infringing products include Defendants' tabletop and non-tabletop fire pits (collectively, the "D163 Patent Accused Products").

83.    A chart demonstrating infringement of claim 1 of the D163 Patent is attached hereto as **Exhibit F**.

84.    On information and belief, Defendants have been and are now indirectly infringing the D163 patent in violation of 35 U.S.C. § 271(b) at least by intentionally instructing, encouraging, aiding, and/or directing others how to offer to sell, sell, and/or use the D163 Patent Accused Products in an infringing manner through their educational and promotional materials and support activities. Upon information and belief, Defendants have committed and continue to commit affirmative acts that cause infringement of the D163 patent with knowledge or willful

blindness that the induced acts constitute infringement of one or more claims of the D163 patent. By way of example, as set forth above, Defendants publish on their website instructions that, when followed in conjunction with use of the D163 Patent Accused Products, infringe the D163 Patent. In addition, upon information and belief, Defendants distribute the D163 Patent Accused Products to retailers for downstream sale to customers along with promotional materials and instructions that, when followed in conjunction with the offer for sale, sale, or use of the D163 Patent Accused Products, infringe the D163 patent.

85.    Defendants have known of the D163 Patent and its relevance to the D163 Patent Accused Products since at least the filing of this Complaint.

86.    Defendants acts have caused and will continue to cause Solo Stove to suffer irreparable injury and damage for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the D163 Patent.

87.    Alternatively, as a result of Defendants' infringement of the D163 Patent, Solo Stove has suffered and continues to suffer damages in an amount not yet determined. These damages may be (i) of at least a reasonable royalty and/or lost profits due to loss of sales, profits, and potential sales that Solo Stove would have made but for Defendants' infringing acts or (ii) Defendants profits pursuant to 35 U.S.C. § 289.

88.    Defendants' infringement of the D163 Patent has been and continues to be willful, such that Solo Stove is entitled to enhanced damages and to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT IV: FEDERAL TRADE DRESS INFRINGEMENT

89.    Solo Stove incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

90.     Solo Stove is the owner of the Solo Stove Trade Dress.

91.     The Solo Stove Trade Dress constitutes protectable trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

92.     The Solo Stove Trade Dress is distinctive and has acquired secondary meaning among the relevant consuming public.

93.     The Solo Stove Trade Dress is non-functional.

94.     Solo Stove's ownership and use in interstate commerce of the Solo Stove Trade Dress is superior to and significantly predates any use of the confusingly similar Infringing Trade Dress by Defendants.

95.     Defendants began using the Infringing Trade Dress in interstate commerce well after the Solo Strove Trade Dress acquired secondary meaning.

96.     Defendants' use of the Infringing Trade Dress in interstate commerce is without the consent of Solo Stove.

97.     Upon information and belief, the Infringing Trade Dress is a deliberate copy of the Solo Stove Trade Dress.

98.     The Infringing Trade Dress is confusingly similar to the Solo Stove Trade Dress.

99.     Defendants' unauthorized and ongoing use of the Infringing Trade Dress in interstate commerce in connection with Defendants' Product Offerings is likely to cause confusion, to cause mistake, or to deceive consumers into believing, mistakenly, that Defendants' Product Offerings originate from Solo Stove, and/or that Defendants and/or Defendants' Product Offerings are affiliated with or are sponsored, licensed or otherwise approved by Solo Stove, all to the detriment of Solo Stove and the public.

100.    Defendants' activities described herein constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

101.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Solo Stove has suffered, is suffering, and unless Defendants are restrained, will continue to suffer, irreparable injury for which there is no adequate remedy at law.

102.    In light of the foregoing, Solo Stove is entitled to injunctive relief prohibiting Defendants from using the Infringing Trade Dress.

103.    Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Solo Stove. Defendants' unlawful actions have caused Solo Stove monetary damage in an amount presently unknown, but to be determined at trial.

104.    In light of the foregoing, Solo Stove is entitled to recover from Defendants all damages, including attorneys' fees, that Solo Stove has sustained and will continue to sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a).

## COUNT V: COMMON LAW TRADE DRESS INFRINGEMENT

105.    Solo Stove incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

106.    Solo Stove is the owner of the Solo Stove Trade Dress.

107.    The Solo Stove Trade Dress constitutes protectable trade dress.

108.    The Solo Stove Trade Dress is distinctive and has acquired secondary meaning among the relevant consuming public.

109.    The Solo Stove Trade Dress is non-functional.

110.    Solo Stove's ownership and use in interstate commerce of the Solo Stove Trade Dress is superior to and significantly predates any use of the confusingly similar Infringing Trade Dress by Defendants.

111.    Defendants began using the Infringing Trade Dress in interstate commerce well after the Solo Strove Trade Dress acquired secondary meaning.

112.    Defendants' use of the Infringing Trade Dress in interstate commerce is without the consent of Solo Stove.

113.    Upon information and belief, the Infringing Trade Dress is a deliberate copy of the Solo Stove Trade Dress.

114.    The Infringing Trade Dress is confusingly similar to the Solo Stove Trade Dress.

115.    Defendants' unauthorized and ongoing use of the Infringing Trade Dress in interstate commerce in connection with Defendants' Product Offerings is likely to cause confusion, to cause mistake, or to deceive consumers into believing, mistakenly, that Defendants' Product Offerings originate from Solo Stove, and/or that Defendants and/or Defendants' Product Offerings are affiliated with or are sponsored, licensed or otherwise approved by Solo Stove, all to the detriment of Solo Stove and the public.

116.    Defendants' activities described herein constitute trade dress infringement in violation of the common laws of the State of Maryland and other states of the United States.

117.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Solo Stove has suffered, is suffering, and unless Defendants are restrained, will continue to suffer, irreparable injury for which there is no adequate remedy at law.

118.    Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Solo Stove.  Defendants' unlawful actions

have caused Solo Stove monetary damage in an amount presently unknown, but to be determined at trial.

## COUNT VI: COMMON LAW UNFAIR COMPETITION

119.    Solo Stove incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

120.    Solo Stove is the owner of the Solo Stove Trade Dress.

121.    The Solo Stove Trade Dress constitutes protectable trade dress.

122.    The Solo Stove Trade Dress is distinctive and has acquired secondary meaning among the relevant consuming public.

123.    The Solo Stove Trade Dress is non-functional.

124.    Solo Stove's ownership and use in interstate commerce of the Solo Stove Trade Dress is superior to and significantly predates any use of the confusingly similar Infringing Trade Dress by Defendants.

125.    Defendants began using the Infringing Trade Dress in interstate commerce well after the Solo Strove Trade Dress acquired secondary meaning.

126.    Defendants' use of the Infringing Trade Dress in interstate commerce is without the consent of Solo Stove.

127.    Upon information and belief, the Infringing Trade Dress is a deliberate copy of the Solo Stove Trade Dress.

128.    The Infringing Trade Dress is confusingly similar to the Solo Stove Trade Dress.

129.    Defendants' unauthorized and ongoing use of the Infringing Trade Dress in interstate commerce in connection with Defendants' Product Offerings is likely to cause confusion, to cause mistake, or to deceive consumers into believing, mistakenly, that Defendants' Product

Offerings originate from Solo Stove, and/or that Defendants and/or Defendants' Product Offerings are affiliated with or are sponsored, licensed or otherwise approved by Solo Stove, all to the detriment of Solo Stove and the public.

130.    Defendants' activities described herein constitute unfair competition in violation of the common laws of the State of Maryland.

131.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Solo Stove has suffered, is suffering, and unless Defendants are restrained, will continue to suffer, irreparable injury for which there is no adequate remedy at law.

132.    Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Solo Stove.  Defendants' unlawful actions have caused Solo Stove monetary damage in an amount presently unknown, but to be determined at trial.

<u>**DEMAND FOR JURY TRIAL**</u>

Solo Stove hereby demands trial by jury in this action of all claims so triable.

<u>**PRAYER FOR RELIEF**</u>

Wherefore, Solo Stove respectfully requests the following relief:

A.    A judgment that Defendants have infringed the '465 Patent, and that such infringement was willful;

B.    A judgment that Defendants have infringed the '227 Patent, and that such infringement was willful;

C.    A judgment that Defendants have infringed the D163 Patent, and that such infringement was willful;

D.    A permanent injunction directing Defendants, and all persons in privity to Defendants, to discontinue infringement of the asserted patents and to cease advertising, marketing, promoting, offering to sell, selling and distributing any products that infringe the asserted patents;

E.    An award of damages adequate to compensate Solo Stove for infringement in an amount equal to Solo Stove's lost profits but in no event less than a reasonable royalty, together with prejudgment interest, post-judgment interest, and costs pursuant to 35 U.S.C. §§ 284 and 289;

F.    An award of Defendants profits pursuant to 35 U.S.C. § 289;

G.    An award of treble damages in light of the willful, intentional, and deliberate character of Defendants' infringing acts pursuant to 35 U.S.C. § 284;

H.    A judgment declaring this an exceptional case and awarding Solo Stove its reasonable attorneys' fees under 35 U.S.C. § 285;

I.    A judgment that Defendants infringed the Solo Stove Trade Dress and committed acts of trade dress infringement under 15 U.S.C. § 1125(a);

J.    A judgment that Defendants infringed the Solo Stove Trade Dress and committed acts of trade dress infringement and unfair competition under the common laws of the State of Maryland;

K.    A permanent injunction directing Defendants, and all persons in privity to Defendants, to discontinue all use of the Infringing Trade Dress, and all confusingly similar variants thereof, and to cease advertising, marketing, promoting, offering to sell, selling and distributing any products that infringe the Solo Stove Trade Dress in the United States;

L.    An order directing Defendants to file with the Court and serve on Solo Stove within thirty (30) days after the service on Defendants of an injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

M.    Defendants' profits and costs, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial;

N.    Solo Stove's damages, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial;

O.    Solo Stove's attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117(a);

P.    Such other and further relief as the Court may deem just and proper.

Dated: November 26, 2024

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Ahmed J. Davis*
    Ahmed J. Davis
    adavis@fr.com
    Fed. Bar No. 17812
    1000 Maine Avenue SW
    Washington, D.C. 20024
    Tel: (202) 783-5070
    Fax: (202) 783-2331

    John S. Goetz (*pro hac vice* forthcoming)
    goetz@fr.com
    N.Y. Bar No. 4295366
    7 Times Square
    (Times Square Tower)
    20th Floor
    New York, NY 10036
    Tel: (212) 765-5070
    Fax: (212) 258-2291

    Matt Colvin (*pro hac vice* forthcoming)
    colvin@fr.com
    Texas Bar No. 24087331
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    Tel: (214) 747-5070
    Fax: (214) 747-2091

    **COUNSEL FOR PLAINTIFF,**
    **SOLO BRANDS, LLC D/B/A SOLO STOVE**